UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LISA FITZSIMMONS | * CIVIL ACTION NO. 2:17-cv-2919 |
| VERSUS | * SECTION "__" (__): |
| CAPITAL ONE, N.A. | * JUDGE: |
| | * MAGISTRATE: |
| | * JURY TRIAL DEMANDED |

**COMPLAINT FOR DAMAGES**

NOW INTO COURT, through undersigned counsel, comes Plaintiff LISA FITZSIMMONS, who respectfully brings this civil action for damages against CAPITAL ONE NATIONAL ASSOCIATION under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq*, LSA- R.S. 23:323 and LSA-R.S. 23:631A, *et seq*. For her case, Plaintiff respectfully avers as follows:

**PARTIES**

1.

Plaintiff, LISA FITZSIMMONS (hereinafter referred to as "Fitzsimmons"), is a person of the full age of majority and is a resident and domiciliary of the Parish of Ascension, State of Louisiana, within the Eastern District of Louisiana.

2.

Defendant, CAPITAL ONE NATIONAL ASSOCIATION (hereinafter referred to as "Capital One"), is a foreign company domiciled in the State of Virginia which entity, at all times

pertinent hereto, was doing and licensed to do business in the State of Louisiana.

## JURISDICTION AND VENUE

3.

Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2611. The Court has pendant jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367.

4.

Venue is proper pursuant to 28 U.S.C. § 1391(a) & (b) and 42 U.S.C. § 2000(e)-5(f), and the acts that gave rise to the cause of action occurred in the Eastern District of Louisiana.

## FACTS

5.

Plaintiff, Lisa Fitzsimmons, began her employment with defendant, Capital One, on or about July 23, 2012 as a commercial loan broker located in New Orleans, Louisiana, within the Eastern District of Louisiana.

6.

As part of her compensation, Capital One paid Fitzsimmons an hourly wage with a base rate of $28.87/hour. Capital One also paid her overtime and an annual bonus.

7.

At all times pertinent hereto, Fitzsimmons had two supervisors: Matthew Wallis (hereinafter referred to as "Wallis") was her supervisor based in New York, New York, and Keith Pounds (hereinafter referred to as "Pounds") was her "immediate" on-site manager in New Orleans, Louisiana.

8.

Throughout her employment, Fitzsimmons had an exemplary performance record and

received a rating of either "Strong" or "Very Strong" in all competency areas of her 2015 performance evaluation. She was never disciplined or evaluated poorly prior to her termination on April 5, 2016. Moreover, Fitzsimmons demonstrated an exceptional level of commitment to her teams and the company.

9.

At all pertinent times, Fitzsimmons was employed by, Capital One, for at least 1,250 hours during the twelve months prior to April 5, 2016, and worked at a location where at least 50 employees were employed twenty or more calendar workweeks in the current or preceding calendar year.

10.

Beginning around late January of 2016, Fitzsimmons started battling a serious health condition of extreme anxiety and depression due to stress caused by several work-related incidents involving her manager Matthew Wallis.

11.

Then around mid-March of 2016, Fitzsimmons' house in Sorrento, Louisiana flooded twice as a result of two severe flash flooding events which occurred in Ascension Parish. The area of Louisiana in and around Ascension Parish was a federally-declared disaster area.

12.

The flooding caused extensive damage to her home rendering it unlivable. The severe flooding also inundated roads in Sorrento, Louisiana, thereby trapping Fizsimmon's in her residence for several days.

13.

Fitzsimmons experienced a tremendous amount of stress on account of the flooding because it damaged her home, her personal property and prevented her from traveling to work in New Orleans.

14.

Around this same time, Fitzsimmons' work-issued laptop computer was malfunctioning. She kept her manager Matthew Wallis apprised of the problems with the computer, its impact on her work, and her efforts to have it fixed by Capital One's IT helpdesk. She also asked Wallis to assist her with entering her time in order to receive her pay checks timely.

15.

On or about March 24, 2016, Fitzsimmons requested time off for this emergency from her manager Wallis but he refused to grant some. She contacted him again on several occasions to notify him of her stress and inability to travel to work due to the disaster. However, she did not receive a response from him.

15.

When Wallis failed to respond, Fitzsimmons then contacted her on-site manager, Keith Pounds, to report her situation. She again requested time off from March 29, 2016 until April 4, 2016. She also sent him pictures of the flood waters in and around her house and the damage they had caused in her day to day affairs.

16.

In response, Pounds approved her request via email and authorized the use of some of her accrued vacation time for the requested days off.  He also offered her advice for handling all the stress and suggested that she go see a medical doctor.

17.

At the moment Capital One learned the reason behind Fitzsimmons absence from work beginning on March 29, 2016 was that she was dealing with her flood-damaged home, facing an incapacitating level of anxiety and depression due to stress, and she was hospitalized for a serious medical condition, Capital One should have immediately granted her reasonable accommodation including use her vacation time and/or medical leave under the Family and Medical Leave Act of 1993 (hereinafter "FMLA").

18.

From March 29, 2016 through April 4, 2016, Fitzsimmons did not call in to report her absence to Capital One because Pounds had approved her time off and authorized the use of her accrued vacation time for those days.

19.

However, Matthew Wallis sent Fitzsimmons a letter dated April 1, 2016 by mail to her flooded home address.  In this letter, Wallis gave her written notice that she had not reported to work for her scheduled shifts from March 29, 2016 to March 31, 2016 and thus had failed to follow proper call out procedure.  He warned that three consecutive "No Call. No Show" days would constitute job abandonment under company policy.

20.

In this letter, Wallis also stated if Fitzsimmons believed she had a disability which required leave as a reasonable accommodation, she had to contact Capital One Associate Relations. He included information on how to initiate a claim for Family Medical Leave. Wallis further warned her that she had to contact him by 5:00 p.m. on April 5, 2016 otherwise her absence would be deemed job abandonment and she would be terminated.

21.

Capital One considered Fitzsimmons' absences on March 29, 2016 through March 31, 2016 to be unexcused and contrary to company policy.

22.

Fitzsimmons did not receive the April 1, 2016 letter because she was not living at her home because of the flood damage. Because she did not timely receive the letter, Fitzsimmons was unaware of the contrary stance Capital One had taken regarding her absences or that Wallis was expecting her to contact him by five o'clock p.m. and that her failure to do so would result in her termination.

23.

When Wallis did not hear from Fitzsimmons by April 5, 2016, Capital One sent Fitzsimmons a letter on April 6, 2016 informing her that her employment was terminated as of April 5, 2016. Again, Capital One sent this letter to the address of Fitzsimmons' vacant flood-damaged home in the federally declared "Disaster Area" so she did not receive it timely.

24.

On or about April 12, 2016, the elevated stress which Fitzsimmons had been enduring exacerbated her serious health condition to such an extent that it necessitated emergency medical

treatment at Ochsner St. Anne Hospital ("Ochsner"). From April 12, 2016 to April 18, 2016, Fitzsimmons was diagnosed with and received inpatient medical treatment for bipolar disorder.

25.

Fitzsimmons' serious mental health condition required continuing treatment by a health care provider upon her release from Ochsner. She sought treatment from her primary care physician, Dr. Son Nguyen, beginning on April 27, 2016 until a referral could be arranged for outpatient treatment with a psychiatrist. Dr. Nguyen released her to return to work on April 29, 2016.

26.

During her absence in late March and April of 2016, Fitzsimmons received a formal diagnosis and treatment for her serious medical condition which prevented her from fulfilling her job responsibilities, providing an update to Capital One Employment Relations on her health status, and completing FMLA paperwork in a timely manner.

27.

On April 28, 2016 Fitzsimmons sent a letter to Capital One's management and their HR Operations-Associate Relations manager, Tasha Smith, informing them that she had been battling "a serious health condition of extreme anxiety and depression" due to stress from incidents with Wallis, that her home was damaged by the flood, and that she had been absent during March and April on account of the recently-diagnosed serious health condition which prevented her from working.

28.

On May 1, 2016, Smith sent a reply email to Fitzsimmons in which she acknowledged receiving Fitzsimmons' May 1, 2016 email containing her April 28, 2016 letter and stated that

she was reviewing the events surrounding the employment decision. However, Smith never followed up with Fitzsimmons.

## STATE LAW WAGE CLAIM

29.

Defendant failed to pay Fitzsimmons eighty-eight (88) hours in wages with a base rate of $28.87 per hour for the pay period of March 14, 2016 to March 28, 2016.

30.

Plaintiff made numerous attempts to contact the payroll employee at Capital One to receive her wages over the course of approximately six months.

31.

Plaintiff retained attorney Bruce Betzer who sent multiple letters of representation which went unacknowledged regarding the missing wages.

32.

It was not until September 14, 2016 that an attorney for Capital One notified Plaintiff's counsel that the failure to pay wages were caused by an "accounting error" and that the wages would be deposited in her bank account that same day.

33.

The wages were deposited directly into Ms. Fitzsimmons' account without her consent and without the approval of her attorney in direct violation of Rule 4.2 of the Louisiana Rules of Professional Conduct.

34.

The same attorney claimed that Ms. Fitzsimmons was paid for 2.133 hours for her "final" day of employment (March 28, 2016). Ms. Fitzsimmons never actually received this payment.

35.

The deposit was of an incorrect sum that did not include calculations for overtime.

## COUNT ONE

### FAILURE TO PROVIDE REASONABLE ACCOMMODATION IN VIOLATION OF FAMILY AND MEDICAL LEAVE ACT

36.

Plaintiff Lisa Fitzsimmons re-alleges and re-avers Paragraphs 1 through 35 above.

37.

29 U.S.C.§ 2612(a)(1)(D) of the Family and Medical Leave Act provides that an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period "because of a serious health condition that makes the employee unable to perform the functions of the position of such employee."

38.

29 U.S.C.§ 2615 states that it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."

39.

In late March of 2016, Fitzsimmons made repeated attempts to notify Capital One as to the great amount of stress she was experiencing from the damage to her home and from her manager Matthew Wallis. Her heightened stress level resulted in severe anxiety and depression, making it very difficult for her to perform her job-related duties.

40

During that same time, she also asked Capital One management for time off to address her issues. However, Capital One management either ignored or denied her requests while her

condition continued to deteriorate until she became so incapacitated as to require hospitalization in April. Capital One failed to make a reasonable accommodation by denying Ms. Fitzsimmons' request for time off.

41.

As stated previously, during late March and April, Fitzsimmons was experiencing a severe medical condition and receiving treatment for it. Her medical condition prevented her from working, communicating with Capital One management regarding her status, responding timely to their communications, and completing the paperwork necessary to obtain a leave of absence under FMLA.

42.

By the end of March, Capital One knew or should have known that Fitzsimmons was functioning under severe stress and needed to take leave as she had communicated the severity of her situation to Keith Pounds who had she see a doctor. But Capital One's failure to grant her a reasonable accommodation under the circumstances constitutes a violation of FMLA.

43.

Nevertheless, Capital One knew or should have known of Fitzsimmons' serious medical condition and granted her medical leave under FMLA by May 3, 2016 when Capital One's HR manager Tasha Smith acknowledged in an email that she had received Fitzsimmons' email which contained her April 28, 2016 letter alerting them to her serious medical condition which was the reason behind her "unexcused" absences. Again, Capital One violated FMLA by failing to provide her reasonable accommodation.

44.

Additionally, Capital One discriminated against Fitzsimmons by refusing to rehire Fitzsimmons after receiving documentation from her healthcare provider stating that she suffered from a serious medical condition which caused her absences but for which she was receiving treatment.

## COUNT TWO

## DISCRIMINATION BASED ON DISABILITY LSA-R.S. 23:323

45.

On or about Aril 29, 2016, upon learning the reason Ms. Fitzsimmons failed to appear for work on March 29, 2016, Capital One intentionally discriminated against Ms. Fitzsimmons based on her mental disability in direct violation of LSA-R.S. 23:232. which prohibits the discrimination of an individual on the basis of disability in employment.

## COUNT THREE

## FAILURE TO TIMELY PAY WAGES IN VIOLATION OF LSA-R.S. 23:631

46.

Plaintiff Lisa Fitzsimmons re-alleges and re-avers Paragraphs 1 through 35 above.

47.

LSA-R.S. 23:631 states that upon the discharge of any employee:

> [I]t shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.

48.

LSA-R.S. 23:632 provides that an employer who fails to comply with the provisions of LSA-R.S. 23:631 shall:

> Be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.

49.

Capital One violated LSA-R.S. 23:631 when it failed to pay Fitzsimmons the amount due her under the terms of her employment for the March 14, 2016 to March 28, 2016 time period within fifteen days following Fitzsimmons' April 5, 2016 discharge date.

50.

Instead, Capital One tendered what it considered to be the amount owed her only after she retained counsel.

51.

Fitzsimmons contends that this amount is incorrect as it does not include the full amount of her base pay for the time period through March 28, 2016, her final day of employment. It also does not include the overtime she earned during the March 14, 2016 to March 28, 2016 time period.

52.

Therefore, Capital One still has not paid the full amount due and owing to Fitzsimmons and it remains in violation of LSA-R.S. 23:631, *et seq*.

## **DAMAGES**

52.

As a result of the actions of Capital One, Fitzsimmons suffers, and continues to suffer, damages in the following, non-exclusive particulars:

a) Back pay, including benefits;

b) Front pay, including benefits;

c) Restitution of benefits lost;

d) Mental anguish;

e) Humiliation and embarrassment;

f) Loss of enjoyment of life;

g) Medical expenses;

h) Pre-judgment interest;

i) Attorney's fees;

j) 90 days of wages and penalties;

k) Cost of these proceedings; and

l) Any and all other injunctive and equitable relief available to Fitzsimmons under law.

53.

Fitzsimmons demands and is entitled to a trial by jury as to all issues so triable.

**WHEREFORE**, plaintiff, Lisa Fitzsimmons requests that this Complaint for Damages be filed and that defendant Capital One be duly cited and served with a copy of this complaint and

that after all legal delays by law have elapsed and due proceedings are had, that there be judgment herein in favor of plaintiff, Lisa Fitzsimmons, and against defendant, Capital One, for an amount supported by the evidence, for front pay and benefits, for back pay and benefits, including any and all monetary losses, compensatory damages, for such additional equitable and legal relief as deemed appropriate, for proper and just by this Court, and for costs and reasonable attorney's fees.

Plaintiff, Lisa Fitzsimmons, further prays for a trial by jury as to all issues so triable.

Respectfully submitted,

__/Bruce C. Betzer_____
Bruce C. Betzer, Bar Number 26800
Jennifer S. Avallone, Bar Number 35613
**The Law Office of Bruce Betzer**
**A Professional Limited Liability Company**
3129 Bore Street
Metairie, Louisiana 70001
Telephone: (504) 832-9942
Facsimile: (504) 304-9964
bruce@brucebetzer.com
Attorneys for Plaintiff, Lisa Fitzsimmons

__/ Leonor E. Prieto_____
Leonor E. Prieto, Bar No. 31530
**Prieto Law Firm, L.L.C.**
7809 Airline Drive, Suite 304-E
Metairie, Louisiana 70003
Telephone: (504) 408-1309
Facsimile: (504) 304-9964
lee@prietolawfirmllc.com
Attorney for Plaintiff, Lisa Fitzsimmons

**PLEASE SERVE:**

**CAPITAL ONE, N.A.**
Through its registered agent for service of process
Corporation Service Co.
320 Somerlous Street
Baton Rouge, LA 70808